**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-00308 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE CARMEN |
| | ) | HENDERSON |
| ROBERT CARTER, | ) | |
| | ) | |
| Defendant. | ) | **OPINION AND ORDER** |

Before the Court is Defendant Robert Carter's ("Carter") Motion for Reconsideration for Bond ("Motion"). (ECF No. 20). For the reasons explained below, the relief sought in Carter's Motion is **DENIED**.

### I. PROCEDURAL BACKGROUND

#### a. The Charges

As the result of a law enforcement investigation, a criminal complaint was filed charging Carter with offenses relating to drug possession, drug trafficking, assaulting law enforcement officers, and firearm possession. (ECF No. 1, PageID# 103). Carter was indicted by a Federal Grand Jury on July 9, 2022, on the following charges: Assault on a Federal Officer pursuant to 18 U.S.C. §§ 111(a)(1) and (b); Felon in Possession of Firearms and Ammunition pursuant to 18 U.S.C. § 922(g)(1); and Possession with Intent to Distribute Cocaine pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (ECF No. 14, PageID# 150–51).

#### b. The Detention Hearing

The hearing giving rise to the Detention Order and Carter's Motion was held on May 20, 2022, by videoconference. (ECF No. 30, Transcript of the Detention Hearing ("Transcript"), PageID# 232). The Court accepted evidence and heard arguments on detention. (*Id.*). In support

of detention, the Government proffered the Criminal Complaint, the May 10, 2022 Affidavit of Detective Matthew Zone ("Affidavit"), and the May 13, 2022 Pretrial Services Report. (*Id.* at PageID# 237). Opposing detention, Carter's counsel proffered a letter written by Monica Campbell, who is Carter's girlfriend and the mother of four of Carter's children. (*Id.* at PageID# 238).

The Government then informed the Court that there is a presumption of detention in this matter since Carter has been charged under the Controlled Substances Act where the maximum term of imprisonment exceeds ten years. (*Id.* at PageID# 240–41). The Government argued that Carter is a flight risk, pointing to Carter's attempt to flee law enforcement officers in March, his lack of employment, his previous conviction for escape, and his failure to remain in an inpatient treatment facility in 2014. (*Id.* at PageID# 241). The Government also argued that Carter is a danger to the community based on the large quantity of controlled substances he was trafficking and his involvement in several community shootings. (*Id.*). According to the Government, Carter is "known to retaliate. . . . has been found in possession of numerous firearms. . . . struck an ATF agent with his vehicle, and he has numerous prior convictions related to those controlled substances and firearms." (*Id.*). Finally, the Government clarified that, after Carter and co-defendant Lauren Guy ("Guy") were involved in a shooting on March 28, 2022, Carter called Monica Campbell—the author of the letter proffered by Carter—"and asked her to prepare black clothing and guns in order for him to retaliate against the people who shot at him." (*Id.* at PageID# 240).

In response, Carter's counsel proffered a letter written by his girlfriend, Monica Campbell, which was filed prior to the detention hearing. (ECF No. 8, PageID# 143). Ms. Campbell's letter establishes Carter's strong family ties and states that Carter regularly cares for his four children

2

(one of whom has special needs) and takes care of his elderly grandmother. (*Id.*). Carter co-parents his children with Ms. Campbell while she attends nursing school and works fulltime. (*Id.*). Carter also secured employment, and Ms. Campbell stated that Carter intended to move in with her and their children. (*Id.*).

Carter's counsel also explained that Carter is not a flight risk because Carter has been out on a cash bond in relation to a state court indictment stemming from the same conduct giving rise to these proceedings. (*Id.* at PageID# 241–42). Counsel stated that Carter has been out on bond since March 29, 2022, on GPS monitoring and home detention, and remains in compliance with the terms of the bond. (*Id.* at PageID# 242). He noted that Carter was supposed to start a new job on the date of his arrest and has very strong family ties in Cleveland; these include his grandmother and aunt with whom Carter lived, and Ms. Campbell and their four children with whom Carter intends to live if released on bond. (*Id.* at PageID# 242–43). Carter also intends to care for his children while Ms. Campbell is at work; counsel asserted that they need him to financially provide for them. (*Id.* at PageID# 243). Carter's counsel argued that continued GPS monitoring, a curfew, and substance abuse treatment could mitigate Carter's risk of flight. (*Id.* at PageID# 243–44).

Magistrate Judge Greenberg then asked Carter's counsel to explain the manner in which Carter has rebutted the presumption that he is a flight risk and danger to the community. (*Id.* at PageID# 245–46). Carter's counsel responded that Carter is presumed innocent: "He has not picked up a case in years. His last case was a drug possession case. He's not a danger to the community. I understand the allegations in the affidavit, and they seem very serious, but he's maintaining his innocence." (*Id.* at PageID# 246). The Court took the issue of detention under advisement. (*Id.* at PageID# 247).

3

### c. The Detention Order and Carter's Motion

On the same day as the hearing, Magistrate Judge Greenberg issued a Detention Order Pending Trial, ordering Carter held without bond during these proceedings (ECF No. 10). The Detention Order bases detention on findings that (1) "there is probable cause to believe that the defendant has committed an offense for which a maximum prison term of ten years or more is prescribed in 21 USC 846; 21 USC 841(a)(1)"; and (2) "[t]he defendant has not rebutted the presumption established by finding 1 that no condition will reasonably assure the defendant's appearance and the safety of the community." (ECF No. 10, PageID# 145–46). The Detention Order bases detention on "clear and convincing evidence", including "Defendant's conduct during his arrest; his substance history; his pattern of similar criminal activity history; the contraband and weapons seized; and his prior arrests and convictions," that "no condition or combination of conditions which will reasonably assure the Defendant's appearance and the safety of the community." (*Id.* at PageID# 146).

Carter moved this Court to reconsider Magistrate Judge Greenberg's Detention Order on July 1, 2022 (ECF No. 20), noting his recent employment, which he could resume if released on bond, his family's ongoing medical and financial needs to which Carter regularly attends, his obligations as a parent to his children, and his intent to live with his grandmother and aunt if released. (*Id.* at PageID# 178–79).

The Government opposed Carter's Motion (ECF No. 22), arguing that the Detention Order should remain in place because the mitigating factors discussed in Carter's Motion were all heard by Magistrate Judge Greenberg during the May 20, 2022 detention hearing. It further asserted that the four statutory factors enumerated in 18 U.S.C. § 3142(g) all weigh in favor of detention. (*Id.*).

4

The Government also notes that Carter has not alleged any changed circumstances justifying reopening of the detention hearing. (*Id.* at PageID# 195).

II. **LAW AND ANALYSIS**

a. **Standard of Review**

Carter's Motion is for reconsideration of the Detention Order. While the motion does not cite a particular statute as its basis, reopening/reconsidering a detention order is governed by 18 U.S.C. §3142(f).

Under §3142(f), the detention hearing:

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f); *See United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). The new information before the Court "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Id. See United States v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) ("New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event."); *United States v. Ford*, 455 F. Supp. 3d 512, 517 (S.D. Ohio 2020) (same).

Information known to the defendant at the time of the hearing cannot be "new information" for the purpose of reopening the detention hearing. *Watson*, 475 F. App'x at 600. *See United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *1 (6th Cir. Sept. 22, 2020) ("To reopen a proceeding, a defendant must first establish that the information was not previously known to

5

him."); *United States v. Floyd*, No. 5:21-cr-736-4, 2022 WL 2818445, at *4 (N.D. Ohio July 18, 2022) (refusing to reopen detention hearing when information relied upon by defendant was known to defendant at the time of the hearing and did not negate the magistrate judge's finding that the defendant was at risk of flight).

Carter's Motion does not specifically point to any changed circumstances warranting reconsideration of the detention issue. While several letters were submitted with the Motion, it is not asserted by counsel that any of the letters indicates a change in circumstances that warrants reopening or reconsidering the Detention Order. Two of the letters were written by Carter's mother, Beverly Carter. (ECF No. 20, PageID# 186–87). These letters discuss Ms. Carter's ongoing need for assistance resulting from a surgery and two-month hospital stay, her expected return to the Cleveland area, and her need for Carter to act as her caretaker upon her return. (*Id.*). It is unknown whether these circumstances were known to Mr. Carter at the time of the detention hearing. It is also not clear how this alone would reduce his risk of flight or potential danger to the community. The other letters submitted with the Motion are a character/reference letter and a second letter by Ms. Campbell, neither of which presents any change in circumstances.

While these facts tend to militate against reconsidering or reopening the detention issue, there is a significant change in circumstances in Mr. Carter's case. In the complaint, Carter was charged with a violation of 18 U.S.C. §924(c) (possession of a firearm in connection with a drug trafficking offense); he is not so charged in the Indictment. This change was unknown to Carter at the time of the detention hearing, since he had not yet been indicted. Given the nature of the penalties associated with a §924(c) violation (five years minimum—life maximum), the removal of that allegation from the charges against Carter necessarily plays into the calculus of risk of flight and danger to the community. This warrants reconsideration of the detention issue.

b. **Legal Standard for Detention**

The Bail Reform Act permits detention pending trial only if a judicial officer finds, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142. "Detention premised on nonappearance requires preponderant evidence of flight risk." *United States v. Byrd*, No. 5:22-cr-00010, 2022 WL 964189, at *1 (E.D. Ky. Mar. 30, 2022). Detention based on dangerousness, however, must be "supported by clear and convincing evidence." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(f)(2)(b)).

The default rule that a defendant should ordinarily be released pending trial is modified, however, for "particularly dangerous defendants." *Id.* The United States Code at 18 U.S.C. § 3142(e)(3) provides that where a "judicial officer finds that there is probable cause to believe that a person committed" certain offenses, including offenses under the Controlled Substances Act, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6 (citing *United States v. Hinton*, 113 F. App'x 76 (6th Cir. 2004); *United States v. Ortiz*, 71 F. App'x 542 (6th Cir. 2003); *United States v. Miller*, 39 F. App'x 278 (6th Cir. 2002)).

Rebutting the section 3142(e)(3) presumption requires a defendant to present evidence that he or she "does not pose a danger to the community or risk of flight." *Stone*, 608 F.3d at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). While the defendant's burden is not difficult to satisfy, satisfaction of the burden does not negate the presumption of detention. *Id.* Rather, the presumption remains because it "represents Congressional findings that

7

certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *Id.* at 946 (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). Rebutting the presumption of detention therefore requires the defendant to "present all the special features of his case that take it outside the congressional paradigm." *Id.*

When a defendant produces evidence that rebuts the section 3142(e)(3) presumption, the Court must look to 18 U.S.C. § 3142(g), which enumerates four factors to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) The weight of the evidence against the person;
> (3) The history and characteristics of the person, including—
>   (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). *See Stone*, 608 F.3d at 945 (explaining proper procedure when a defendant produces evidence to rebut the section 3142(e)(3) presumption). Thus, if the Government established probable cause that Carter committed an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more, and if Carter put forth evidence to rebut the presumption of detention resulting from such probable cause, this Court must analyze the factors enumerated in section 3142(g). *See Stone*, 608 F.3d at 945–46.

    **c. The Section 3142 Analysis**

The Government has shown probable cause that Carter committed an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years. The Grand Jury Indictment alone "establishes probable cause to believe that a defendant committed the crime with which he is charged." *Stone*, 608 F.3d at 945. Here, Count Eight of the Indictment charges Carter with Possession with Intent to Distribute Cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Therefore, the Government met its burden to show probable cause.

Carter has also produced some evidence that he would not be a danger nor a flight risk if released. Carter's counsel proffered Ms. Campbell's letter, supporting Carter's strong family ties in Cleveland and his employment. (ECF No. 8, PageID# 143). Carter's counsel also noted that Carter has been under GPS monitoring supervision since March 29, 2022, without incident, and reiterated that Carter's family ties and new job mitigate any risk of flight presumed by statute. (ECF No. 30, PageID# 242). There is a discrepancy in the record as to where Carter intends to live if released on conditions; at the detention hearing, Carter's counsel indicated that Carter would live with Ms. Campbell (ECF No. 30, PageID# 243-244). Carter's Motion states an intention to live with his grandmother and aunt where he has purportedly lived for 22 years (ECF No. 20, PageID# 178). At the detention hearing, however, counsel did state that Carter could live at either

9

residence. (ECF No. 30, PageID# 244). With regard to dangerousness, Carter's counsel indicated that Carter maintains his innocence and disputes the allegations in the Affidavit. (*Id.* at PageID# 246).

As previously stated, Carter's Motion includes additional materials in the form of letters written by his friend and employer, Victoria Pride of Pride Bunch Entertainment & Catering LLC, two letters written by Carter's mother, Beverly Carter, and a second letter prepared by Ms. Campbell. (ECF No. 20, PageID# 185–88). His mother's letters discuss her recent surgery and her need for Carter to be her caretaker. (*Id.* at PageID# 186–87). The other letters describe Carter's good character and his sense of family obligation. (*Id.*).

Because Carter introduced some evidence that he will not be a risk of flight or a danger to the community, the Court finds that he has rebutted the presumption of detention. The Court must analyze each section 3142(g) factor to determine whether there are conditions of release that will reasonably assure Carter's appearance as required and the safety of any other person and the community. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

1. ***Nature and Circumstances of the Offenses (18 U.S.C. § 3142(g)(1))***

Carter has been indicted for assaulting law enforcement officers in violation of 18 U.S.C. § 111(a)(1) and (b). Other charges against Carter include offenses relating to both drug trafficking and firearms. The assault allegation is especially troubling because it is alleged to have involved Carter ramming a law enforcement vehicle while attempting to flee from same. (ECF No. 30, PageID# 240). Equally troubling is the allegation that Carter asked Ms. Campbell to retrieve weapons to be used in retaliation against those who shot at him and co-defendant Lauren Guy. (*Id.*). If the Government is correct, any intended retaliation was apparently stopped by Carter's arrest on March 29, 2022.

The Court is very concerned about these allegations, combined with evidence obtained during the search of a residence purportedly associated with Carter. According to the Government, six firearms and various drugs were found. (*Id.*). Carter's history of felony convictions makes it illegal for him to possess firearms. The nature and circumstances of the offenses weighs in favor of detention.

### 2. Weight of the Evidence (18 U.S.C. § 3142(g)(2)) and History and Characteristics (18 U.S.C. 3142(g)(3))

The weight-of-the-evidence factor under section 3142(g)(2) "goes to the weight of evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). *See United States v. Tawfik*, 852 F. App'x 965, 966 (6th Cir. 2021) (same); *United States v. Spivak*, 555 F. Supp. 3d 541, 548 (N.D. Ohio 2021) (clarifying that the weight-of-the-evidence factor of section 3142(g)(2) "is not a pretrial determination of guilt").

At the detention hearing, the Government relied upon the Affidavit and the Pretrial Services Report to establish that Carter was arrested on March 29, 2022, assaulted law enforcement officers, and possessed crack cocaine and two firearms. (ECF No. 30, PageID# 240). The Government also asserted that a search of Carter's residence uncovered six additional firearms and various drugs. *(Id.)*. While there is some question as to whether Carter possessed the firearms and drugs associated with the arrest on March 29, 2022, the firearms and drugs allegedly found at his residence present more compelling evidence against him.

Carter argues that he should be released on bond because he has demonstrated an ability to comply with GPS monitoring by Cuyahoga County.[1] (ECF No. 30, PageID# 242; ECF No. 20,

---

[1] At the time of the detention hearing, Carter was subject to state-court charges relative to the conduct described in the Affidavit. Those charges have since been dismissed, and Carter is now in federal custody.

PageID# 178). Carter also argued, both during the detention hearing and in his Motion before the Court, that his employment opportunity, strong family ties to the area, and his family's medical and financial needs rebut the presumption that he is a flight risk. (ECF No. 30, PageID# 242–43; ECF No. 20, PageID# 178–79).

Between 2004 and 2019, Carter has amassed 13 convictions, both misdemeanors and felonies. (*See* Pretrial Services Report). Eight of those convictions involved drug possession or trafficking, one was attempted burglary, one was escape (a felony of the third degree, for which he did one year in jail), and one was for carrying a concealed weapon. (*See* Pretrial Services Report). He is alleged to have had several probation violations and to have absconded from treatment. (*See* Pretrial Services Report). Carter's history shows sufficient dangerousness to support detention. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010).

Carter's proposed living arrangements, with either his grandmother and aunt or Ms. Campbell, do not offer significant assurance to the Court that he will not be a danger to the community. To the extent that Carter was allegedly living with his grandmother and aunt when the activity described in the Affidavit (and Indictment) occurred, Carter residing at this residence while on bond does not give the Court any solace that he will not be a danger to the community. Carter purports to have lived with his grandmother and aunt for 22 years (ECF No. 20, PageID# 178). During that time, as previously stated, he had 13 convictions. Living with his grandmother and aunt has done nothing to deter him from engaging in criminal conduct. Further, to the extent that Carter purportedly called Ms. Campbell to assist him with retaliation against others by gathering guns, the Court is concerned about allowing Carter to live with her as well. (ECF No. 1, PageID# 125). Neither living situation provides the Court sufficient assurance that Carter will not pose a danger to the community if released.

In light of all the information before the Court, the weight of the evidence and Carter's history and characteristics weigh in favor of detention. While Carter's employment and family ties are important and relevant factors that this Court takes seriously in its analysis under Section 3142(g)(3), those considerations are outweighed by Carter's criminal history and the circumstances surrounding the instant alleged offenses. The latter factors present dangerousness issues which cannot be ignored and heavily tilt the scales in favor of detention.

### 3. *Nature and Seriousness of the Danger of Carter's Release (18 U.S.C. 3142(g)(4))*

Many of the circumstances previously discussed also apply in analyzing §3142(g)(4). The Affidavit details the mentioned a shooting which, according to the Government, could be heard over a court-authorized wiretap. (ECF No. 1-1, PageID# 19–21, ¶¶ 31–33). The intercepted calls indicate that shots were fired at Carter and Guy. (*Id.* at ¶ 32). Carter then called Ms. Campbell and allegedly said, "I need you to find me something all black to put on and get them guns in the closet," to which Ms. Campbell responded, "Okay." (*Id.* at ¶ 38). Carter was arrested by law enforcement soon after his arrival at Ms. Campbell's home, but not before he allegedly rammed a law enforcement vehicle with his car and someone in his car allegedly tossed two firearms and an ounce of alleged crack cocaine out of the window. (*Id.* at ¶ 40).

Carter's intercepted phone conversations suggest that Carter was a target of the shooting, and that Carter intended to retaliate. (ECF No. 1-1, PageID# 19, ¶ 38). If true, this information clearly supports Carter's detention under section 3142(g)(4). *See United States v. Smith*, No. 20-cr-814, 2021 WL 615301, at *6 (N.D. Ohio Feb. 17, 2021) (agreeing with Magistrate Judge Henderson's worries "about situations when there's drugs and guns, particularly a situation where it shows that worry to be true, there's drugs and we have people being shot . . . ."); *United States v. Edwards*, No. 07-20605, 2010 WL 157516, at *5 (E.D. Mich. Jan. 13, 2010) (finding that

13

continued possession of firearms and alleged involvement in shooting supports detention under the "nature and seriousness of the danger posed by the defendant's release" prong of section 3142(g)); *United States. v. Watson*, No. 10-cr-30323, 2010 WL 3272934, at *6 (E.D. Mich. Aug. 12, 2010) (expressing "extreme hesitation" with permitting a defendant allegedly involved in a shooting back into the community).

### d. Constitutional Concerns

Finally, Carter's Motion argues that his pretrial detention violates the Due Process Clause of the Fifth Amendment. Carter's concerns arise from the multi-defendant nature of this action, which will require a "voluminous amount of discovery" and thus lengthy pretrial proceedings. (ECF No. 20, PageID# 179).

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o personal shall be . . . deprived of life, liberty, or property, without due process of law[.]" The Supreme Court has concluded that, although "liberty is the norm[] and detention prior to trial or without trial is the carefully limited exception," pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq*. is such an exception and does not offend the Due Process Clause of the Fifth Amendment. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Though there is no clearly-drawn line between constitutional and unconstitutional pretrial detention, such detention may not be indefinite. *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012). The length of pretrial detention alone "rarely offends due process." *Id.* The Sixth Circuit also considers other factors in its analysis, including "the extent of the prosecution's responsibility for the delay of the trial . . . the gravity of the charges . . . and the strength of the evidence upon which the detention was based." *Id.* (citing *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000)).

Carter's constitutional arguments are unavailing. The circumstances of this case, in its present posture, do not give rise to the constitutional concerns raised by counsel. As discussed previously, the gravity of the charges, weight of the evidence, and Carter's criminal history justify pretrial detention. There has been no delay in this matter which would implicate due process concerns or cause the Court to revisit the bond issue.

### III.  CONCLUSION

The Court has reconsidered the Magistrate Judge's denial of bond. Mr. Carter's request for bond is hereby **DENIED**. The Court finds that there is clear and convincing evidence that Carter poses a serious danger to the community if released on bond, and there are no conditions or combinations of conditions that would assure the Court to the contrary. While risk of flight is a closer question given all of the information in the record (including Carter's apparently successful period on GPS monitoring with Cuyahoga County), this issue is moot given the Court's finding as to Carter's dangerousness.

**IT IS SO ORDERED.**

Date: August 16, 2022

_____
**JUDGE CHARLES ESQUE FLEMING**
**UNITED STATES DISTRICT COURT**